IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

DIANNA S. MORRIS,

        Plaintiff,

v.                                            CIVIL ACTION NO. 5:16-cv-07899

REVERSE MORTGAGE
SOLUTIONS, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Plaintiff's Second Amended Complaint* (Document 16), the *Defendant's Motion to Dismiss* (Document 17), the *Defendant's Memorandum in Support of Its Motion to Dismiss the Second Amended Complaint* (Document 18), the *Plaintiff's Revised Memorandum in Opposition to Defendant's Motion to Dismiss Second Amended Complaint* (Document 35),[1] and the *Defendant's Reply Memorandum in Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint* (Document 20), as well as all attached exhibits. For the reasons stated herein, the Court finds that the motion to dismiss should be granted.

**FACTUAL ALLEGATIONS**

The Plaintiff, Dianna Morris (Ms. Morris), is one of Daisel Morris' seven children. Daisel Morris died in November 2015, and left no will. The Plaintiff and her child shared her mother's

---

[1] The Plaintiff's original response in opposition exceeded the page limitation set by the Local Rules of Civil Procedure. The Court gave the Plaintiff the opportunity to file a response in compliance with the rules, and will consider only the revised response.

home, located at 109 Washington Street in Beckley, West Virginia, and continue to reside in the home. Ms. Morris also cared for her mother, and handled her business affairs in the years prior to her death. None of Daisel Morris' other children live in West Virginia, and the Plaintiff does not have contact information for some of her siblings.

Ms. Morris brought this suit against Reverse Mortgage Solutions LLC (RMS), a Texas corporation owned by Walter Investment Management Corporation. She alleges that "RMS claims to be the servicer and current holder of a reverse mortgage loan made to Daisel Morris by a California lender, 'American Advisors Group.'" (Second Am. Compl. at ¶ 27.) Ms. Morris received a notice, addressed to the Estate of Daisel Morris, wherein RMS claimed a right to sell Daisel Morris' home. RMS informed Ms. Morris that Daisel Morris had taken out a reverse mortgage loan, and that RMS was owed $38,000. RMS threatened to foreclose unless Ms. Morris paid the full $38,000. RMS continued to send communications identified as debt-collection notices, and addressed to the Estate of Daisel Morris. Ms. Morris alleges that RMS knew that "no legal entity identified as 'The Estate of Daisel Morris existed; and that these communications were being received and read only by plaintiff." (*Id.* at ¶ 34.) Ms. Morris obtained counsel, who informed RMS of her representation and requested information regarding the claimed mortgage on the property, including the loan documents, legally required disclosures, an account statement, and the home appraisal. RMS refused to supply the information. It instead continued to communicate directly with Ms. Morris and to proceed toward foreclosure. RMS scheduled a trustee sale of the 109 Washington Street property for June 29, 2016.

Ms. Morris alleges that RMS has not shown that it has a legal or equitable interest in the property and that it failed to provide proper notice. She asserts the following causes of action:

Count I – W.Va. Code § 46A-2-128(e); Count II – Contract claim for violation of good faith and fair dealing; Count III – Fair Debt Collection Practices Act (FDCPA); Count IV – Failure to provide a statement of account and other loan documents upon request; and Count V – Imposition of excess or unlawful fees and charges in violation of W. Va. Code § 46A-3-107, W. Va. Code § 31-17-8, and W.Va. Code § 46-24. She seeks a declaration that the loan is void and the Deeds of Trust securing it are unenforceable, an injunction preventing foreclosure of the property, statutory and compensatory damages, and reasonable attorney fees and costs.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" *Id*. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Furthermore, the Court

need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.) In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.) "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**DISCUSSION**

RMS argues that Ms. Morris lacks standing to bring claims related to her late mother's reverse mortgage because she was not the consumer or borrower. It further argues that it is not a debt collector as that term is used in the FDCPA, and asserts that the factual allegations are overly speculative. RMS asserts that the proper method for bringing claims of this nature would be for an estate representative for Daisel Morris to be appointed and represent the interests of the estate

as a whole. Ms. Morris argues that the WVCCPA should be read liberally to permit her to bring suit because she stands to lose her interest in the home as one of her mother's heirs unless she pays what RMS demands. She further argues that her status as an heir and successor-in-interest is sufficient to confer standing with respect to the other claims as well. Ms. Morris argues that her factual pleadings meet the applicable pleading standard.

The Court finds that Ms. Morris lacks standing to pursue her claims regarding the reverse mortgage on her mother's property under any of the legal theories presented. She was not the borrower and has no obligation to pay any debt incurred by her mother and secured with the home, she did not sign the contract, and RMS made no efforts to collect a debt from her except to the extent she sought to prevent the foreclosure of her mother's home. As the persuasive case law from this Court indicates, an heir does not automatically take on the position, obligations, and rights held by a deceased party regarding a home loan. *Ballard v. Bank of Am., N.A.*, No. CIV.A. 2:12-2496, 2013 WL 5963068 (S.D.W. Va. Nov. 7, 2013) (Copenhaver, J.), *aff'd sub nom. Ballard v. Bank of Am., NA*, 578 F. App'x 226 (4th Cir. 2014).[2]

In *Ballard*, the plaintiff and his sister jointly inherited their mother's property, which was subject to a mortgage and lien held by Bank of America. The property was subsequently transferred to the plaintiff and his wife. The plaintiff was the executor of his mother's estate,

---

2 The Plaintiff argues that the Court should not apply *Ballard*, which is not binding precedent, and instead consider whether the West Virginia Supreme Court would be likely to take a broader view, particularly of the protections in the WVCCPA. The Court finds *Ballard* to be persuasive and adopts Judge Copenhaver's thorough analysis of state law applicable in both state and federal courts. The Court also notes that the Fourth Circuit affirmed *Ballard* in an unpublished decision, and the West Virginia Supreme Court reviewed it in an ancillary legal malpractice claim Mr. Ballard brought against his counsel for failing to keep the case in state court. *Charles V. Ballard, Plaintiff Below, Petitioner vs. Bren J. Pomponio, Defendant Below, Respondent*, No. 15-0738, 2016 WL 4579066, at *3 (W. Va. Sept. 2, 2016) (unpublished) (denying a legal malpractice claim by the plaintiff in *Ballard* against his attorney because the case would have ended with judgment in favor of the defendant regardless of forum).

which was closed prior to the difficulties with the mortgage. He continued to make mortgage payments over a period of several years. Bank of America began sending notices that the monthly payment had increased and the loan was in arrears. Judge Copenhaver found that the plaintiff had not assumed his late mother's contractual mortgage obligations, and thus, could not pursue a breach of contract claim. *Ballard*, 2013 WL 5963068 at *7–8. Because the plaintiff was not a party to the contract, had no obligation to repay the mortgage, and received collection letters addressed only to the decedent's estate, Judge Copenhaver reasoned that he was not a "consumer" under the WVCCPA. *Id.* at 9–10.

The Plaintiff's position here is significantly more tenuous than that of the plaintiff in *Ballard*. The Plaintiff asserts that no Estate of Daisel Morris has been formed as a legal entity, but seeks to recover based on her status as one of Daisel Morris' seven heirs. Without the formation of an estate to determine Daisel Morris' assets and liabilities and satisfy any creditors, the Plaintiff cannot establish that Daisel Morris' home would be an asset distributed to her heirs.[3] Just as Ms. Morris could not interfere with her mother's disposal of property during her life based on her anticipation of inheriting the property, she cannot now claim an interest in property without alleging facts that, if proven, would show that she has a current legal interest in the property. She does not allege that RMS suggested that she has a personal obligation to repay the loan or that it sought to collect a debt from her personally. Ms. Morris' WVCCPA claims fail because she does not allege facts that, if proven, would establish that she is a "consumer." Her contract claims fail because she does not allege facts that, if proven, would establish that she has a contractual relationship with RMS. Her FDCPA claims fail because she is not a consumer who owes any

---

3 W.Va. Code Chapter 44 describes the process by which estates are administered in West Virginia.

obligation or alleged obligation, and RMS is a creditor, rather than a debt collector, as defined in that statute. 15 U.S.C. § 1692(a)-(f); *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 860 (E.D. Va. 2016) (mortgage servicers are typically not debt collectors for purposes of the FDCPA). Similarly, she is not a "borrower" for purposes of the Real Estate Settlement Procedures Act (RESPA), nor is she currently a successor-in-interest.[4] Likewise, Ms. Morris lacks any interest in the property or role in the lending transaction that would give her standing to pursue any claim regarding excessive fees or other unlawful charges imposed during the loan origination process. Her lack of standing extends to her request for declaratory or preliminary relief. Therefore, the Defendant's motion to dismiss must be granted.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion to Dismiss* (Document 17) be **GRANTED** and that the *Plaintiff's Second Amended Complaint* (Document 16) be **DISMISSED WITHOUT PREJUDICE**. The Court further **ORDERS** that all pending motions be **TERMINATED AS MOOT.**

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 10, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

4 The Court need not resolve the question of whether inheriting property places the heir(s) in the position of the original borrower for purposes of RESPA. Ms. Morris' allegations indicate that the estate administration process by which heirs gain a legal interest in property has not taken place. As RMS points out, communication and negotiation exclusively with Ms. Morris could expose it to liability with respect to Daisel Morris' other potential heirs.